**ARMADILLO BAIL BONDS, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 05–88–01369–CV.**

Court of Appeals of Texas, Dallas.

May 2, 1989.

Rehearing Denied June 12, 1989.

**194**

Randy Adler, Dallas, for appellant.

Alec B. Stevenson, III, Dallas, for appellee.

Before WHITHAM, THOMAS and BURNETT, JJ.

WHITHAM, Justice.

■ In this criminal bail bond forfeiture case, the appellant-surety, Jerry Wardlow, doing business as Armadillo Bail Bonds, appeals from a judgment against the bond in favor of the appellee, the State of Texas. The sole issue is whether article 22.16(c)(2) of the Texas Code of Criminal Procedure violates the separation of powers doctrine provided by article II, section 1 of the Constitution of the State of Texas. The trial court concluded that the statute violated separation of powers and entered final judgment before the expiration of eighteen months after the forfeiture was entered. We agree that the statute violated separation of powers. Accordingly, we affirm.

Effective June 20, 1987, article 22.16(c)(2) of the Texas Code of Criminal Procedure provides that after forfeiture of a bond a final judgment may be entered against a bond not earlier than eighteen months after the date the forfeiture was entered, if the offense for which the bond was given is a felony. We surmise that article 22.16(c)(2) resulted from the decision of the Court of Criminal Appeals in *Williams v. State*, 707 S.W.2d 40 (Tex.Crim.App.1986). In effect, the holding in *Williams* deprived bail bondsmen of a two year post-final judgment period in which they could obtain a ninety-five percent reduction in the judgment amount if they produce the principal-defendant. *See Williams*, 707 S.W.2d at 44. In turn, the legislature, by article 22.16(c)(2), denied the State of Texas a final judgment for an eighteen month period in order to allow the bail bondsman to produce the principal-defendant. If the principal-defendant is produced, then the bail bondsman may hope for a remittitur of all or a part of the amount of the bond. TEX. CODE CRIM.PROC.ANN. art. 22.16(d) (Vernon Supp.1989).

It is undisputed that the offense for which the bond was given is a felony and that the bond was executed and posted after the effective date of article 22.16(c)(2). It is also undisputed that after the effective date of article 22.16(c)(2), by judgment nisi, the trial court on February 19, 1988, forfeited the bond and that on August 16, 1988, the trial court entered final judgment against the bond. Hence, the trial court entered final judgment contrary to the eighteen month time restraint directed by the legislature in article 22.16(c)(2). In his sole point of error, Wardlow contends that the trial court erred as a matter of law in denying his motion for new trial because of the provisions of article 22.16(c)(2). The State responds that under the doctrine of separation of powers the legislature may not tell a court that it must wait eighteen months after trial before it may enter a final judgment. We agree with the State.

■ From the Constitution of the State of Texas, we know that the people of Texas have divided the powers of government of the State of Texas into three departments. We know also that these three departments are the legislative, the executive, and the judicial, and that none of these departments can exercise any power assigned by the constitution to either of the others. As commanded by the Constitution of the State of Texas:

> The powers of the Government of the State of Texas shall be divided into three distinct departments, each of which shall

be confided to a separate body of magistracy, to wit: Those which are Legislative to one, those which are Executive to another, and those which are Judicial to another; and no person, or collection of persons, being of one of these departments, shall exercise any power properly attached to either of the others, except in instances herein expressly permitted.

TEX. CONST. art. II, § 1. A court is an instrumentality of sovereignty, the repository of its judicial power, with authority to adjudge as to the rights of person or property between adversaries. *Mengel Box Co. v. Fowlkes*, 135 Tenn. 202, 186 S.W. 91, 92 (1916). Therefore, in the context of the present case, we must determine if the State of Texas, as sovereign, by its Constitution has placed the judicial power of the State of Texas in its courts. We conclude that the State of Texas has placed judicial power, with authority to adjudge as to the rights of person or property between adversaries, in the judicial branch. We reach this conclusion because the State of Texas, as sovereign, created district courts, and provided for judges of those courts, in article V, sections 1 and 7 of its Constitution and placed its judicial power in all criminal cases of the grade of felony in those district courts. TEX. CONST. art. V, § 8. More specifically article V, section 8 vests power over bail bond forfeitures in the judicial branch of the government. *Williams*, 707 S.W.2d at 45. Hence, it is clear from these constitutional provisions that the district court has power over bonds and thus as part of that power, it also has power over bond forfeitures. *Williams*, 707 S.W.2d at 45. It is also clear that the legislature may define certain parameters within the operation of the judicial branch, whether it be to mandate certain penalties; certain procedures, such as the Texas Code of Criminal Procedure; or even rules of evidence. *Williams*, 707 S.W.2d at 45. However, the legislature may not interfere with the functions and powers of the judicial branch so as to usurp those functions and powers. *Williams*, 707 S.W.2d at 45–46.

Therefore, we reach the question of whether the legislature interfered with the functions and powers of the judicial branch so as to usurp those functions and powers by imposing the eighteen month delay in the entry of final judgment. "Judicial power" as envisioned by the Constitution embraces (1) the power to hear facts, (2) the power to decide the issues of fact made by the pleadings, (3) the power to decide the questions of law involved, (4) *the power to enter a judgment on the facts found in accordance with the law as determined by the court*, and (5) the power to execute the judgment or sentence. *Morrow v. Corbin*, 122 Tex. 553, 62 S.W.2d 641, 645 (1933); *Kelley v. State*, 676 S.W.2d 104, 107 (Tex.Crim.App.1984). The Texas Constitution gives the judicial branch power over bail bond forfeitures. The legislature may, of course, pass laws to facilitate that power and regulate the procedures guiding the right to bail and the forfeiture of bail. *Williams*, 707 S.W.2d at 47. However, the legislature has no power to alter a final judgment rendered by the court in a bond forfeiture. Otherwise, the power of the judicial branch would be a mockery, subject to the whim of the legislature. The finality of judgments would not exist and courts would be legislative forums. *Williams*, 707 S.W.2d at 47.

The Code of Criminal Procedure particularizes each step in the collection of bail bonds. First is the entry, after the principal's failure to appear on being called, of judgment nisi that the state recover of the defendant and of the sureties the amount for which they are bound, and that the judgment will be made final, unless good cause for the principal's failure to appear be shown. *Burgemeister v. Anderson*, 113 Tex. 495, 259 S.W. 1078 (1924); TEX.CODE CRIM.PROC.ANN. art. 22.02 (Vernon 1966). By the judgment nisi the court acquires jurisdiction to adjudicate the matter of enforcing the principal's obligation to the state, as well as that of the sureties. *Burgemeister*, 259 S.W. at 1079. Moreover, the proceedings shall be governed by the same rules governing other civil suits. When a forfeiture has been declared upon a bond, the court or clerk shall docket the case upon the scire facias or upon the civil

docket, in the name of the State of Texas, as plaintiff, and the principal and his sureties, if any, as defendants; and the proceedings had therein shall be governed by the same rules governing other civil suits. TEX.CODE CRIM.PROC.ANN. art. 22.10 (Vernon Supp.1989). Furthermore, the Texas Code of Criminal Procedure suggests that final judgment be entered following trial on the merits and without any prescribed waiting period. When, upon a trial of the issues presented, no sufficient cause is shown for the failure of the principal to appear, the judgment shall be made final against him and his sureties, if any, for the amount in which they are respectively bound; and the same shall be collected by execution as in civil actions. Separate executions shall issue against each party for the amount adjudged against him. The costs shall be equally divided between the sureties, if there be more than one. TEX.CODE CRIM.PROC.ANN. art. 22.14 (Vernon 1966).

■ We conclude that the eighteen month delay in the entry of judgment dictated by the legislature is not a practice and procedure rule. We reach this conclusion because the Supreme Court has the full rulemaking power in the practice and procedure in civil actions, and the Supreme Court's rules and amendments to rules remain in effect unless and until disapproved by the legislature. TEX.GOV'T CODE ANN. § 22.004(a) & (b) (Vernon 1988). Thus, it cannot be said that the requirement that entry of judgment be delayed eighteen months is a practice and procedure rule. Were that requirement a practice and procedure rule, it would be found in the Texas Rules of Civil Procedure as promulgated by the Supreme Court. Instead, we conclude that the requirement that entry of judgment be delayed eighteen months constitutes legislative interference in the conduct of the business of the judiciary. Many years ago, the Georgia Legislature declared that all applications for certiorari to the Georgia Supreme Court not decided within ninety days should be considered as having been granted. Thus, the legislature denominated the judgment of the Court upon the grant and refusal of

certioraries. *Holliman v. State*, 175 Ga. 232, 165 S.E. 11 (1932). In doing so, the legislature violated the separation of powers provisions of the Georgia Constitution. *Holliman*, 165 S.E. at 14. The court, by the constitution adopted by the sovereign people, cannot surrender prerogatives which are inherent in courts and absolutely essential to their existence and the efficient administration of justice. *See Holliman*, 165 S.E. at 14. Indeed, it is not within the power of the legislature, by any exercise of its legitimate legislative functions, to impose limitations and restrictions upon the discharge of purely judicial functions upon a distinct co-ordinate branch of the government which is alike independent of the two other co-ordinate branches of the state government—executive and legislative. *Holliman*, 165 S.E. at 15. The sovereign state, the people, may by constitutional amendment declare a subordination of one of these powers to another. But, until they do, the court cannot recognize such subordination, or regard the surrender of the functions delegated to it by the Constitution we have sworn to support, as otherwise than a breach of the sacred obligations we assume upon our induction into office. *Holliman*, 165 S.E. at 15. In *Holliman*, the Georgia Supreme Court addressed a legislative direction to the judicial branch to act within a designated time period. In the present case, we address a legislative direction to the judicial branch to refrain from action for a designated time period. We conclude that a statute which requires the judicial branch to act or refrain from acting within a specified time is unconstitutional as an unwarranted encroachment by the legislative branch upon the prerogatives and functions of the judiciary. *See* 16 AM.JUR.2d *Const. Law* § 331 (1979). Hence, we conclude that the matter of delay in the entry of judgment is a judicial decision and not a legislative decision. Whether or not justice is administered without "denial or delay" is a matter for which the judges are answerable to the people, and not to the General Assembly. *Schario v. State*, 105 Ohio St. 535, 138 N.E. 63, 64 (1922). Therefore, a provision

of law mandatory in its terms, intentions, and character, requiring the court in the exercise of a jurisdiction duly conferred upon it to hear or determine a cause within thirty days from the time within which it is filed in court, or submitted to the court, is an unreasonable and unconstitutional invasion of judicial power, and therefore void. *Schario,* 138 N.E. at 64.

We conclude that articles 22.01 through 22.17 of the Texas Code of Criminal Procedure provide the mechanism whereby the State of Texas collects a debt owed it. That debt is to be collected by the same rules governing other civil actions. Further, following trial on the merits, the State, if successful, shall have its final judgment as in other civil actions. Judicial power in that civil action embraces the power to enter a judgment on the facts found in accordance with the law and determined by the court. We conclude that article 22.16(c)(2) violates the separation of powers doctrine provided by article II, section 1 of the Constitution of the State of Texas. We reach this conclusion for two reasons. First, we reason that, if the legislature has no power to alter a final judgment rendered by the court in a bond forfeiture case, then the legislature has no power to delay entry of a final judgment for eighteen months. Second, the eighteen month delay makes a mockery of the power of the judicial branch. If the legislature be permitted to create an eighteen month delay in obtaining a final judgment, then nothing prevents the legislature from imposing an interminable delay in obtaining final judgment. Thus, we conclude that the power to delay entry of a final judgment is the power to destroy the judicial branch of government. We reason that without a final judgment nothing happens. Therefore, when the judicial branch can make nothing happen, it is powerless. For example, in the context of the present case, execution upon a judgment issues upon a "final judgment." *See* TEX.R.CIV.P. 627. Rendition of judgment is the pronouncement by the court of its conclusions and decision upon the matter submitted to it for adjudication which may be oral as well as written. *Dunn v. Dunn,* 439 S.W.2d 830,

832 (Tex.1969). A judgment is "rendered" when the decision is officially announced either orally in open court or by some memorandum filed with the clerk. *Dunn,* 439 S.W.2d at 832. However, entry of judgment refers to the ministerial act by which an enduring evidence of the judicial act is afforded. *Mathis Indep. School Dist. v. Odem Indep. School Dist.,* 222 S.W.2d 270, 272 n. 2 (Tex.Civ.App.—San Antonio 1949, no writ). That ministerial act, prohibited by the legislature in the present case for eighteen months, must occur before execution can issue. The clerk of the court or justice of the peace shall issue the execution upon a judgment upon application of the successful party or his attorney after the expiration of thirty days *from the time a final judgment is signed.* TEX.R. CIV.P. 627. Thus, absent entry of judgment, no execution can be had and, therefore, collection of the judgment debt is postponed or denied by legislative interference in the power vested by the Constitution in the judicial branch to adjudge as to the rights of persons or property between adversaries. Hence our reasoning that without a final judgment the judicial branch can make nothing happen and thus becomes powerless.

We decline to commit judicial suicide. To reverse the trial court is to do so. In the present case, we are not concerned with rules of practice, procedure, or evidence. Rather, in the present case, we address the exercise of judicial power and deny the legislature the right to interfere with the exercise of judicial power. Perhaps the following indicates the nature of the need to maintain strict adherence to separation of powers. From time to time, different voices gain the ear of the legislature. If the legislature may dictate to the judiciary if and when final judgment be entered, then at one point the manufacturer may never obtain a favorable final judgment, but yet on another occasion the consumer may never have his or her final judgment. The illustrations of disputes between litigants are endless: ex-wife and ex-husband; management and labor; worker and compensation carrier; borrower and lender;

landlord and tenant. Hence, we conclude that under the separation of powers doctrine the legislative branch may not invade the province of the judicial branch by mandating delay in the entry of judgment. In this connection, we note that Wardlow points to the sixty day waiting period before divorce may be granted. TEX.FAM. CODE ANN. § 3.60 (Vernon 1975). Wardlow maintains that the existence of section 3.60 requires a holding that article 22.-16(c)(2) does not violate separation of powers. Section 3.60 of the Texas Family Code is not before us and we express no opinion as to the constitutionality of the required sixty day waiting period. In addition, Wardlow directs us to various statutory provisions controlling when actions may be brought. Wardlow asserts that the existence of these statutes requires a holding that article 22.16(c)(2) does not violate separation of powers. None of these statutes are before us, and we express no opinion as to the constitutionality of statutes controlling when actions may be brought.

This opinion is not to be read as applicable to statutory and court promulgated rules of practice, procedure, and evidence. Such rules properly provide for the disposition of judicial business as legal proceedings move from filing to final judgment. The present case involves no such rules. Instead, in the present case, the legislature directs the judiciary as to when the judicial branch shall enter judgment against a class of litigants favored by the legislature. The separation of powers doctrine permits no such interference by the legislative branch in the power vested by the Constitution in the judicial branch to adjudge as to the rights of person or property between adversaries. Consequently, we conclude that the trial court did not err as a matter of law in denying Wardlow's motion for new trial because of the provisions of article 22.16(c)(2). We overrule Wardlow's sole point of error.

Affirmed.